**Nos.** 21-15758, **21-15761,** 21-15762, 21-15763

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: APPLE INC. DEVICE PERFORMANCE LITIGATION,

NAMED PLAINTIFFS AND SETTLEMENT CLASS MEMBERS,

*Plaintiffs-Appellee,*

v.

BEST COMPANIES, INC.,

*Objector-Appellant*,

v.

APPLE INC.

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-md-02827
Hon. Edward J. Davila

## OBJECTOR-APPELLANT'S OPENING BRIEF

Scott A. Kamber
skamber@kamberlaw.com
**KamberLaw, LLC**
201 Milwaukee Street, Suite 200
Denver, CO 80246
Telephone: (303) 222-0281

*Attorneys for Objector-Appellant*

## DISCLOSURE STATEMENT

Objector-Appellant Best Companies, Inc., does not have any parent corporation or publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT......................................................... i

TABLE OF AUTHORITIES ................................................... iii

JURISDICTIONAL STATEMENT........................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............. 2

STATEMENT OF THE CASE ................................................ 2

    A. The Nature of the Case ................................................ 2

    B. The Course of Proceedings and Disposition Below...................... 3

        1. The Settlement and Notice ...................................... 4

        2. Best Companies, Inc. learns of the Settlement and objects..... 6

        3. The District Court approves the Settlement. ......................... 8

SUMMARY OF ARGUMENT................................................. 9

STANDARD OF REVIEW .................................................... 12

ARGUMENT ................................................................. 13

I.   The District Court erred by including NNPs in the Settlement
     Class definition.............................................................. 13

II.  The District Court erred when it failed to order additional,
     adequate notice to NNP Class Members. ...................................... 18

CONCLUSION................................................................. 26

# TABLE OF AUTHORITIES

**CASES**

*Animal Legal Def. Fund v. United States Dep't of Agric.*, 933
    F.3d 1088 (9th Cir. 2019) .......................................... 14, 15, 17

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) .................... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................... 19, 20, 25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................... 19

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th
    Cir. 2011) ................................................................... 12

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir.
    2015) .......................................................................... 12

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989) .................................... 12

*Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d
    1206 (9th Cir. 1999) ..................................................... 15

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .......................... 20, 22, 25

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306
    (1950) .................................................................... 19, 26

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San
    Francisco*, 688 F.2d 615 (9th Cir. 1982) ............................ 19

*Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020) ..................................... 12

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ... passim

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir.1993) .............. 13

*United Com. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853
    (9th Cir. 1992) ............................................................. 15

iii

**STATUTES**

28 U.S.C. § 1291...................................................................... 1

28 U.S.C. § 1332(d)(2)(A) ........................................................ 1

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) .................................................19, 20

Fed. R. Civ. P. 4(h)(1)(B).........................................................24

# JURISDICTIONAL STATEMENT

The court below had subject matter jurisdiction pursuant to: (1) 28 U.S.C. § 1331 because the Plaintiffs below alleged that Apple violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*; (2) the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because this case is a class action, the amount in controversy exceeds $500,000, and minimal diversity exists; and (3) 28 U.S.C. § 1367(a) because all of the state law claims alleged below formed part of the same case or controversy as the federal claims. (2-ER-288–89.)

This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. Final judgment was entered in the court below on March 23, 2021. (1-ER-2–5.) Objector-Appellant filed a timely Notice of Appeal on April 16, 2021. (3-ER-366–68.)

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court err by interpreting the Settlement Agreement as releasing the claims of Nonnatural Persons ("NNPs"), despite the fact that the Settlement Class, as defined by the parties and the District Court, was specifically limited to "individuals" and not "persons."

2. Did the District Court err by failing to require that constitutionally sufficient notice be given to NNP purchasers when it did not mandate direct notice to known purchasers who were NNPs while requiring such direct notice to known natural persons?

## STATEMENT OF THE CASE

### A. The Nature of the Case

This case arose out of alleged defects in the batteries and software of certain Apple devices that caused those devices to unexpectedly shut down and/or overheat. (1-ER-7.) The devices affected were, among others, the iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE (the "Affected Devices"). (1-ER-7.) In 2017, Apple released purported fixes to its device operating system (iOS 10.2.1 and iOS 11.2) that addressed the alleged defects. (1-ER-7.) However, the software updates allegedly did not fix

the defects, but rather "'concealed [them] by secretly throttling the Devices' performance to reduce the number of unexpected shutdowns to a more manageable volume.'" (1-ER-7 (quoting 2d Consol. Amend. Compl. ("SCAC" ¶¶ 9–10.))

## B. The Course of Proceedings and Disposition Below

The alleged performance reduction to the Affected Devices resulted in dozens of class-action lawsuits filed in federal and state courts in late 2017 and early 2018. (1-ER-8–9.) The federal actions were consolidated pursuant to 28 U.S.C. § 1407 by the JPML in the Northern District of California, and captioned *In re Apple Inc. Device Performance Litigation*, No. 18-md-2827. (1-ER-9.) Plaintiffs filed a consolidated complaint on July 2, 2018, and the District Court partially granted Apple's motion to dismiss on October 1, 2018, with leave to amend. (1-ER-9.)

Plaintiffs amended the consolidated complaint and filed the Second Consolidated Amended Complaint ("SCAC") on November 30, 2018. (1-ER-9.) The District Court partially granted Apple's motion to dismiss the SCAC on May 3, 2019, with leave to amend. (1-ER-9.) Plaintiffs chose not to amend the SCAC and the case proceeded with the

3

portions of the SCAC that survived the motion to dismiss as the operative complaint. (1-ER-9–10.) The parties subsequently engaged in discovery and Apple produced millions of pages of documents. (1-ER-10.)

### 1. *The Settlement and Notice*

The parties mediated in person on several occasions in 2019 and ultimately agreed to settlement terms. (1-ER-10–11.) In February 2020, the parties executed the Settlement Agreement. (1-ER-11.) There were 120 Plaintiff signatories to the Settlement Agreement. (*See* 2-ER-98– 217 (signature pages to Settlement Agreement of Plaintiffs).) Not a single one of those 120 Plaintiff signatories, nor any other Named Plaintiff on the SCAC is a NNP. (*See* 2-ER-98–217; *see also* 2-ER-225– 26 (list of Named Plaintiffs).) On February 28, 2020, the Plaintiffs moved for preliminary approval of the settlement. (1-ER-12.) On May 27, 2020, the District Court granted preliminary approval of the settlement and provisionally certified the Settlement Class, as defined in the Settlement Agreement:

> [a]ll former or current U.S. owners of iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices running iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2

or later (for iPhone 7 and 7 Plus devices), and who ran these iOS versions before December 21, 2017.

(1-ER-12.) "U.S. owners" was defined to include "all individuals who owned, purchased, leased, or otherwise received an eligible device, and individuals who otherwise used an eligible device for personal, work, or any other purposes." (1-ER-12.) Neither the Settlement Agreement, nor the District Court, included NNPs or even "persons" in the Settlement Class. (*See* 2-ER-74–75; 1-ER-12.)

The District Court approved the notice process selected by the parties, which was limited solely to sending notice via email and direct mail to "the email address of record on the Apple ID account of the members of the Settlement Class." (2-ER-82.) No notice was sent to either the physical or electronic address of any NNP purchaser. (*See* 2-ER-82.) Crucially, the Settlement Agreement did not require any backup or publication notice. (*See* 2-ER-82–83.) As a result, no effort whatsoever was made to direct notice to NNP purchasers of Affected Devices that were not the users of the devices (*i.e.* the individual whose Apple ID and mail address was on record for the Affected Device). This failure to direct notice to NNP purchasers was particularly glaring for

5

those NNPs that purchased Affected Devices directly from Apple and for whom Apple has contact information.

### 2. *Best Companies, Inc. learns of the Settlement and objects*

Best Companies, Inc. ("Best Companies") is a construction company based in Oklahoma City, Oklahoma. (2-ER-62.) Best Companies purchased at least ten iPhones ostensibly subject to the Settlement. (2-ER-62.) Best Companies provides iPhones to its employees and officers, including its mobile construction workers and salespeople. (2-ER-62.) The performance issues that are the subject of this settlement adversely impacted Best Companies by degrading the expected performance of the applicable iPhones that it had purchased for use by its officers and employees. (2-ER-62.) While individuals who work for Best Companies may have been registered users with Apple and received notice to their individual email addresses, Best Companies *qua* Best Companies never received notice of the Settlement.

Best Companies learned of the Settlement in September 2020 and filed a timely objection on October 6, 2020. (*See* 2-ER-64.) Best Companies objected to the Settlement to clarify that NNPs were never contemplated to be part of the Settlement and, that the claims of Best

Companies and other NNPs should not be released. (2-ER-62.)

Alternatively, Best Companies also objected because the Settlement

notice and claims process were fundamentally flawed so as to make it

nearly impossible for NNPs to effectively participate in the settlement.

(2-ER-62.)

Whether or not the Settlement was intended to include NNPs, it

certainly did not provide sufficient notice to owners of Affected Devices

who were NNPs. (*See* 2-ER-63–64.) NNPs like Best Companies

purchased Affected Devices for their employees, and owned of millions

of Affected Devices. However, the notice plan employed was effectively

designed to give notice only to individuals who were the *users* of the

Affected Devices, intentionally excluding notice to NNPs. (*See* 2-ER-82–

83 (notice sent to email address associated with Apple ID account of

phone user, not purchaser).) There is nothing in the record to

demonstrate that notice was given specifically to a single NNP. (*Cf.* 1-

ER-35 ("'[n]otice was disseminated to hundreds of thousands of

corporate email addresses'", but no specific notice was given to NNP

purchasers.).)

### 3.     *The District Court approves the Settlement.*

The District Court held the final approval and fairness hearing on December 4, 2020. (*See* ECF 589.) By order dated March 17, 2021, the District Court granted final approval of the Settlement, overruling all objections, including that of Best Companies. (*See* 1-ER-33–39.) The District Court erroneously found that the settlement administrator, Angeion Group, "undertook a comprehensive notice campaign," relying on the fact that "'[n]otice was disseminated to hundreds of thousands of corporate email addresses.'" (*See* 1-ER-35 (quoting Pls' Reply in Support of Mot. for Final Approval).) The court also erroneously found that the "notice program was well executed, far-reaching, and exceeded" Rule 23's notice requirements. (1-ER-35.) Finally, the District Court erroneously found that there was "no reason to believe that there has been any systematic exclusion of NNPs from the notice campaign." (1-ER-35.)

On March 23, 2021, the District Court entered an amended Judgment, dismissing the case with prejudice. (1-ER-2–5.) On April 16, 2021, Best Companies timely filed a notice of appeal. (3-ER-366–68.)

8

## SUMMARY OF ARGUMENT

The District Court erred when it approved a settlement that by its terms resolved claims solely for individuals, but applied that settlement broadly to persons (including NNPs) other than individuals. The Settlement does not by its terms include companies or other NNPs, and NNPs should not be bound by the Settlement. The Settlement Class is defined to include only "individual" owners of the Affected Devices, not companies, entities, or even "persons," a term that may include both individuals and entities.

The use of the term "individual" is consistent across the Settlement Agreement, the motion for preliminary approval, the District Court's order granting preliminary approval, and the District Court's final approval order. Sustaining the lower court's approval of the Settlement would require this Court to disregard weighty precedent that makes clear that the term "individual" includes only natural persons while the term "person" includes both natural and nonnatural persons. If Apple wanted the Settlement and its releases to apply broadly to "persons," including NNPs, then Apple it failed to do so when it entered into a Settlement Agreement that applied only to individuals.

9

In the wake of its failure to include NNPs in the Settlement Class definition, Apple has post-hoc attempted to broaden the Settlement Class without changing the Settlement Agreement or giving proper notice to NNPs, leading the District Court down a path to reversable error[1].

NNPs like the Best Companies should not be considered to be releasing their claims pursuant to the Settlement because, by its express terms, the Settlement does not apply to them.[2] The Settlement process, from the beginning, was by and for individuals who used iPhones, not NNPs that purchased iPhones for use by individuals.

The District Court further compounded that error when it found that the Settlement's notice plan was adequate even though absolutely

---

[1] Best Companies takes no position as to why Class Counsel, which only represents individuals, put the Settlement at risk by not arguing against Apple's ill-advised effort to broaden the Settlement and Release beyond its express terms.

[2] Best Companies notes that it is not seeking to block the Settlement from moving forward and compensating individuals. By its terms, the Settlement does not apply to NNPs, so NNPs are properly excluded from the Settlement and should not be bound by its terms. Best Companies has a separate case against Apple. (*Best Companies, Inc. v. Apple Inc.*, 5:20-CV-6971-EJD (N.D. Cal.), which can move forward once it is clear that the Settlement here does not release its claims against Apple.

no effort was made to provide notice to NNP purchasers of Affected Devices, that were readily identifiable—particularly where NNPs made corporate purchases directly from Apple.

Class actions work because absent class members are given sufficient information so that they can make a rational decision about whether to give a release for the consideration that they are offered. Rule 23(c)(2)(B) provides an unambiguous requirement that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The District Court failed to direct any notice whatsoever to NNP purchasers that were reasonably identifiable, even though they were not the registered user of Affected Devices. If NNPs were meant to be included in the Settlement, this second error deprived NNP purchasers of due process.

Accordingly, this Court should reverse the District Court's finding that NNPs were included in the Settlement and permit the implementation of the Settlement as to individuals while excluding NNPs and preserving their rights. Alternatively, if this Court should find that the Settlement's use of the term "individual" indeed included

11

NNPs, then this Court should reverse the District Court's finding that the notice of the Settlement was reasonable with respect to NNPs, and remand this case and direct the District Court to provide Constitutionally sufficient notice to NNPs.

## STANDARD OF REVIEW

This Court reviews de novo a "district court's interpretation of a stipulation of settlement." *Parsons v. Ryan*, 949 F.3d 443, 453 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021); *see Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("Interpretation of settlement agreements, like interpretation of contracts, are subject to de novo review."). Because Section I of the Argument turns on the District Court's interpretation of the word "individual" in the Settlement Agreement, de novo review applies to Section I even though the Court reviews approval of a "class action settlement 'for clear abuse of discretion.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011)).

Here, Best Companies does not challenge the approval of the Settlement. Rather, Best Companies challenges the Court's expanded

12

interpretation of the term "individual," which went beyond natural born persons to include NNPs, contrary to the plain meaning of the term as acknowledged by this Court and the United States Supreme Court. Thus, the de novo standard of review applies to Section I.

As to Section II, Best Companies seeks review of the notice provisions. This Court reviews "a district court's rulings regarding notice de novo." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019) (internal quotation omitted); *see also Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir.1993) ("We review de novo whether notice of a proposed settlement satisfies due process."). Thus de novo review applies to Section II of the Argument.

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY INCLUDING NNPs IN THE SETTLEMENT CLASS DEFINITION.

The District Court should not have included NNPs within the Settlement Class at all, which would have avoided the notice and due process problems that plague this settlement, *see* Argument Section II, *infra*. Plaintiffs and Apple never contemplated that the settlement would apply to NNPs like Best Companies when negotiating the settlement. This is evidenced by the Settlement Class definition:

13

> [a]ll former or current U.S. owners of iPhone 6, 6 Plus, 6s, 6s
> Plus, 7, 7 Plus, and SE devices running iOS 10.2.1 or later
> (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2
> or later (for iPhone 7 and 7 Plus devices), and who ran these
> iOS versions before December 21, 2017.

(2-ER-74–75.) The Settlement Agreement further defined "U.S. owners"

as "*individuals* who owned, purchased, leased, or otherwise received an

eligible device, and *individuals* who otherwise used an eligible device

for personal, work, or any other purposes." (2-ER-75 (emphasis added).)

This definition was ultimately adopted by the District Court as the

definition for the Settlement Class. (*See* 1-ER-3; 1-ER-12.) Neither the

class definition proposed in the Settlement Agreement, nor the class

certified for settlement purposes by District Court, ever included NNPs

or even "persons" in the Settlement Class—the class definition has

always been limited to "individuals". (*See* 2-ER-74–75; 1-ER-12.)

Crucially, the Settlement Class is comprised only of "individuals"

who owned or used the Affected Devices. As this Court previously held,

the term individual plainly means "'human being'" when used "as a

noun with no corresponding group or category . . . ." *Animal Legal Def.*

*Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1096 (9th Cir.

2019). The law typically considers the term "individual" to mean a

14

human being, not a non-human entity like a company. *See id.* at 1093–94 (examining authorities for the proposition that "individual" means a "natural person as opposed to an organization"; a "single human being"; and "a subcategory of person—that is, a human being." Similarly, the Supreme Court held in *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707–08 (2014), that under the Dictionary Act, "individuals" are distinct from, among other entities "corporations and companies," all of which are included in the word "person".

The Parties chose to have the Settlement Class comprised of "individuals." (2-ER-75.) Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *opinion amended on denial of reh'g,* 203 F.3d 1175 (9th Cir. 2000).

Here, the terms of the Settlement Agreement and the intent of the parties as to who would be in the Settlement Class could not be more clear: the Parties chose to use the term "individuals," without any further qualification or definition. (2-ER-74–75.) The Parties' intent is even clearer in light of the fact that the settlement was negotiated by

15

and on behalf of 120 Plaintiffs, none of whom was a NNP. (2-ER-98–217.) Thus, the Settlement Class is comprised of natural persons "who owned, purchased, leased, or otherwise received an eligible device, and [human beings] who otherwise used an eligible device for personal, work, or any other purposes." (2-ER-74–75.)

Best Companies is a corporation, not a natural person, (2-ER-62), and is therefore not a member of the Settlement Class. It appears that sometime after the execution of the Settlement, Apple may have had buyer's remorse and wished that it had negotiated a broader release that would encompass NNPs as well as individuals. To further that end, Apple successfully persuaded the District Court that "individual" did not in fact mean individual but, instead was synonymous with "person". Quoting Apple's papers and performing no independent analysis, the District Court ignored the well-settled definition of "individuals" as natural persons, stating that "[t]he term 'individuals' is not restricted in any way to natural persons." (1-ER-34.) The District Court cited no judicial or statutory authority for this proposition.[3] Unfortunately,

---

[3] The District Court cited to no case law, but rather to Apple's Statement in Support of Final Approval, ECF 555. But even Apple's

Apple and the District Court had it backward. *See Animal Legal Def. Fund*, 933 F.3d at 1096. ("where . . . 'individual' is used as a noun with no corresponding group or category, its plain meaning is 'human being.'") Thus, in the absence of further definition or qualification, "individuals" must mean natural persons, not NNPs.

Excluding NNPs from the Settlement in this case would not derail the Settlement in any way. On the contrary, correcting the District Court's error will permit the Settlement to proceed as it was originally contemplated by the settling parties. It is clear that, from the beginning of the settlement process, the Parties contemplated that only individuals would be class members. The Settlement Agreement defined the Settlement Class as consisting solely of individuals (2-ER-74–75), and all of the Named Plaintiffs are individuals. (*See* 2-ER-98–217; 2-ER-225–26.)[4]. The fact that some NNPs may have submitted claims, or that Apple may have been willing to pay money to obtain releases from

---

Statement cited no authority for the bald proposition that "individual" typically means anything other than a natural person.

[4] It bears noting that the number of Named Plaintiffs in the SCAC was quite large, and delineating them all consumed 90 pages of the SCAC. Indeed, there are 120 Plaintiff signatories to the Settlement Agreement. Not a single one of those 120 plaintiff signatories, nor any other Named Plaintiff on the SCAC is a NNP.

NNPs, does not magically transform the definition of the Settlement Class to include NNPs.

The District Court clearly erred when it found that Best Companies—and all other NNPs—were a part of the Settlement Class, as defined. This Court should remand with instructions to implement the Settlement with the term individual given its common usage as limited to natural-born person, thus excluding Best Companies and all other NNPs from the Settlement Class.

## II. THE DISTRICT COURT ERRED WHEN IT FAILED TO ORDER ADDITIONAL, ADEQUATE NOTICE TO NNP CLASS MEMBERS.

Even if this Court declines to reverse the District Court's erroneous finding that NNPs are part of the Settlement Class, the District Court's denial of due process to Best Companies and other NNPs is an independent ground for reversal. When approving a settlement for class claims brought pursuant to Rule 23(b)(3), a district court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Rule 23's notice provisions are designed to ensure that class notice comports with the due process rights of absent class members. *See Roes, 1-2*, 944 F.3d at 1045 (quoting Fed. R. Civ. P. 23 advisory comm. n. to 1966 amendment) ("'This mandatory notice pursuant to subdivision (c)(2) . . . is designed to fulfill requirements of due process to which the class action procedure is of course subject.'") (alteration in original). To satisfy the constitutional protections of procedural due process, "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). To be reasonable, class notice must not "systematically leave any group without notice . . . ." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Indeed, as the Supreme Court has held, "individual notice to identifiable class members is not a discretionary consideration to be waived," but "*an*

19

*unambiguous requirement* of Rule 23." *Eisen*, 417 U.S. at 176 (emphasis added).

Where class members are asked to release substantial damages, they have a right to opt out of the settlement and also "the right to the best notice practicable." *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd*, 564 U.S. 338 (2011).

In *Roes, 1-2*, this Court reversed approval of a class-action settlement, finding that the notice program there—a single mailed notice supplemented by posters hung in the defendants' facilities—"fell short of 'the best notice that is practicable under the circumstances.'" 944 F.3d at 1046 (quoting Fed. R. Civ. P. 23(c)(2)(B)). The Court found it "particularly problematic that, despite concerns that former employees in particular might be difficult to reach by mail, the settlement provided no other means of reaching former employees." *Roes, 1-2,* 944 F.3d at 1046. Indeed, because the shortcomings of the notice process in *Roes, 1-2* could have been addressed by "numerous other reasonable options," the notice used was manifestly not the best notice practicable. *Id.* at 1047. The Court noted that publication notice "has long been used as a

20

supplement to other forms of notice, and technological developments are making it ever easier to target communications to specific persons or groups and to contact individuals electronically at little cost." *Id.* Because the parties did not "at least make some reasonable attempt to reach former employees who could not be notified by mail," the Court held that the notice did not comport with due process and reversed the district court's approval of the notice process. *Id.* at 1048.

Here, there is no question that the notice to NNPs was not "the best notice practicable." By tying the notice solely to the Apple ID on an Affected Device, the Settlement focused on notifying *users* of Affected Devices, but not necessarily the *owners*.[5] However, the Class here is expressly defined as "owners" of Affected Devices, not only mere users. (1-ER-12.) Specifically, it is **owners** of Affected Devices who are asked

---

[5] Where individual Class Members are both the user and owner of an Affected Device, the notice was arguably sufficient as to them. However, due process requires more than sufficient notice for *some* class members; it requires "that individual notice be sent to all class members who can be identified with reasonable effort." *Eisen*, 417 U.S. at 177. If NNPs are indeed Class Members, there is simply no excuse for not directing individual notice to them, where they may be reasonably identified. Here, for example, Apple possesses contact information for corporate purchasers who purchased directly from Apple. There is no excuse for the failure to provide such entities with direct notice, if they are included in the Settlement.

to release their claims for damages against Apple. (Agreement § 10.1.) (*See* 1-ER-3–4 (releases granted by "Settlement Class Members," who are defined as the "owners" of Affected Devices).) As such, if NNPs are considered class members, then all owners of Affected Devices, including NNPs, were entitled to "the best notice practicable." *Molski*, 318 F.3d at 952. Such best practicable notice here would have been the same direct notice that was given to individuals.

Just as the notice plan in *Roes, 1-2* did not adequately reach former employees of the defendants, the notice plan here does not adequately reach NNPs, where the user of an Affected Device is frequently not the same as the owner of that device. Because NNPs are non-human entities, NNPs generally could not be users of Affected Devices with registered Apple IDs. Thus, to the extent that notice was sent to users of Affected Devices, the notice was clearly insufficient for Affected Devices owned by NNPs (who could not be users of those devices).

The District Court erred when it found that the notice program was reasonable even though the notice program systematically excluded NNPs, like Best Companies, that purchased Affected Devices for their

employees to use as work tools. Most iPhone users sign-in to their iPhones with their own, individual Apple IDs. This is true even when the users are provided phones as work tools by their employers. Here, where the Notice contemplates only direct notice to email addresses associated with the Apple IDs of Affected Devices, in practice that meant that notice was sent only to the *users* of the phones, and not necessarily the *owners* of the phones. This is a problematic structure when the Settlement Class is defined in the first instance to be "owners" of the Affected Devices. This illustrates exactly what happened to Best Companies. Best Companies purchased Affected Devices and provided them to its employees to use as work tools. (2-ER-62.) As a result, Best Companies *qua* Best Companies was not provided any notice whatsoever of the Settlement[6], despite being the "owner" of the devices. Best Companies only learned of the Settlement by happenstance, through a business acquaintance. (2-ER-64.) As a result, without

---

[6] According to the Claims Administrator, one Best Companies employee who used their work email address for their personal Apple ID received notice at their individual work email address. (2-ER-57.) But, notice to an individual employee for a device owned by and used for the benefit of Best Companies is not the same as notice to Best Companies. Such notice to an individual user just happened to be at a Best Companies domain.

adequate notice, NNPs like Best Companies were not provided Constitutionally adequate notice of their right to opt out or to attempt to make claims in this Settlement.

The District Court noted that notice was purportedly "disseminated to hundreds of thousands of corporate email addresses." (1-ER-35.) However, the fact that thousands of individual users of corporate devices associated their Apple IDs with their particular work email address, and received notice at that email address, does not equate to providing notice to the corporate entity that owns those devices. Those emails to individual users at a workplace domain do not excuse the lack of direct notice to NNPs who were purchasers, but not registered users of Affected Devices. Certainly the Parties to the Settlement can be expected to understand that an email to an employee at a corporate domain is not effective notice to a corporation. *Cf. e.g.* Fed. R. Civ. P. 4(h)(1)(B) (service of process for a company must be made "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . .").

The District Court's failure to require even a de minimis attempt at notice to the many thousands (if not millions) of NNPs who are Class

24

members was plainly unreasonable and violates due process. The court has a non-discretionary obligation to ensure that the settling parties direct individual notice to all Class members "who can be identified through reasonable effort that [they] may request exclusion from the action and thereby preserve [their] opportunity to press [their] claim separately or that [they] may remain in the class and perhaps participate in the management of the action." *Eisen*, 417 U.S. at 176.

The District Court should have required that Apple and the Plaintiffs make a reasonable attempt to identify and notify NNP Class members. *See Roes, 1-2*, 944 F.3d at 1047 (the parties should have made at least "some reasonable attempt to reach former employees" who could not be notified by mail). For example, Apple could have provided Angeion Group with contact information for corporate purchasers of Affected Devices based on its own internal sales records. The parties could have also subpoenaed sales records from the major U.S. cellular carriers to identify corporate purchasers of Affected Devices. *Cf. Molski*, 318 F.3d at 952 (holding that individual class members could have been identified using a list of disabled drivers from the Department of Motor Vehicles). Or, at the very least, the Parties could have directed Angeion

25

Group to promulgate publication notice intended to reach corporate purchasers of mobile devices so that NNPs could have had at least constructive notice of the Settlement and the claims for damages that they were being asked to release. There was simply no effort whatsoever to provide notice to NNPs—direct or indirect, even where they could be identified through reasonable effort. *See Mullane*, 339 U.S. at 315 ("[W]hen notice is a person's due, process which is a mere gesture is not due process."). That no effort was made to provide notice to NNPs falls short of due process and is reversible error.

## CONCLUSION

For all the reasons set forth above, Objector-Appellant Best Companies respectfully requests that this Court: reverse the finding of the District Court that NNPs are included in the Settlement Class, and hold that NNPs are excluded from the Settlement Class. In the alternative, Objector-Appellant Best Companies respectfully requests that this Court reverse the District Court's finding that the notice promulgated pursuant to the Settlement Agreement satisfied Rule 23 and due process, and that the case be remanded for further proceedings to identify and provide reasonable notice to NNPs.

26

Dated: October 1, 2021   Respectfully submitted,

        **KamberLaw, LLC**

By: <u>s/ Scott A. Kamber</u>

Scott A. Kamber
skamber@kamberlaw.com
**KamberLaw, LLC**
201 Milwaukee Street, Suite 200
Denver, CO 80246
Telephone: (303) 222-0281

Deborah Kravitz
dkravitz@kamberlaw.com
**KamberLaw, LLP**
401 Center Street, Suite 111
Healdsburg, CA 95448
(707) 820-4247

*Attorneys for Objector-Appellant*

27

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____21-15761_____

I am the attorney or self-represented party.

**This brief contains** ___5,199___ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[xx] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ Scott A. Kamber_____ **Date** _October 1, 2021___
*(use "s/[typed name]" to sign electronically filed documents)*